In the Matter of the Application of HELEN MARX, Appellant, Respondent, for the Restoration to Her of Her Child KARLYN OLGA VON TILZER, Now in the Custody of JACK VON TILZER and ISABEL B. VON TILZER, Respondents, Appellants.

First Department, June 23, 1930.

*Clarence V. Opper* of counsel [*Charles H. Griffiths* with him on the brief; *Griffiths & Content*, attorneys], for the petitioner.

*Melville H. Cane* of counsel [*Pincus Berner* with him on the brief; *Ernst, Fox & Cane*, attorneys], for Jack Von Tilzer.

*William V. Goldie* of counsel [*Goldie & Gumm*, attorneys], for Isabel B. Von Tilzer.

MERRELL, J. This proceeding was instituted by the petition of Helen Marx, the mother of the infant child, Karlyn Olga Von Tilzer, to obtain the custody of said child and to vacate an order

in adoption proceedings whereby the respondents, Jack Von Tilzer and Isabel B. Von Tilzer, the paternal grandparents of said infant, adopted her. The petitioner was the wife of respondents' son, R. Russell Von Tilzer, whom she married on December 16, 1926. A daughter, the subject of this proceeding, was born of such marriage on January 26, 1928. About ten days after her birth the child's father died. Thereafter until on or about May 17, 1929, the petitioner and her infant daughter resided with the respondents in their home. On May 17, 1929, the petitioner was married to one Milton G. Marx. According to the petition herein, the petitioner became engaged to marry said Marx in January, 1929, and then informed the respondents, with whom she and the infant were living, of her intention to remarry, and that to prevent the custody of the infant child being taken by the parents of the petitioner while the petitioner was on a contemplated trip to Europe on her honeymoon, an arrangement was made resulting in the adoption of the infant daughter by the respondents by order of one of the surrogates of New York county. The order of adoption was granted upon the written consent of the petitioner. The petitioner alleges in her petition that it was the intention and agreement that through such adoption proceedings the grand-parents of the child were to retain the custody of the child only so long as the petitioner was abroad, and that upon her return the custody of the child should be turned over to the petitioner. The petitioner alleges that by virtue of such understanding and agreement on the part of respondents she signed the consent to their adoption of her infant daughter, and that in doing so she was assured that the adoption was merely a temporary expedient to be effective only until the petitioner's return from Europe. In her petition the petitioner alleges that she was induced to sign the consent to the adoption of her daughter by the grandparents by reason of such representations, and that the respondents did not then intend to keep their promise, but intended to retain the custody of said child permanently by virtue of such adoption and to prevent the petitioner from resuming the custody of her child. The petitioner alleges that she believed the representations so made by respondents and relied thereon, and in reliance thereon was induced thereby, and not otherwise, to sign papers, of the particulars of which the petitioner disclaims any knowledge; that she was hurried into signing said papers and did not read them fully when she signed same, and that she signed the same at the instigation of the attorney for respondents only after and by reason of the representations before mentioned; that immediately upon return of the petitioner to this country with her husband,

and upon completing arrangements for her residence here, the petitioner went to the respondents and demanded the return of her said child, but that respondents refused to return the child and informed the petitioner that they did not intend to return the custody of the child to the petitioner, and that they would not give up the said child; that it was their child, and that the child would not be permitted to pay visits to the petitioner wherever the petitioner might reside.

Following such refusal to return the child to the custody of the petitioner, the latter first instituted a proceeding in the Supreme Court to vacate the order of adoption whereby the respondents adopted the said infant daughter of the petitioner by reason of the fraud perpetrated by respondents upon the petitioner whereby she was induced to acquiesce in such adoption. The matter coming on to be heard at Special Term, the petition was there " dismissed without prejudice to the commencement of an action to set aside the order of adoption or the bringing of a proceeding to determine the child's custody according to its own best interest." The court at Special Term, in dismissing the original proceeding, held that it was without jurisdiction to entertain a summary proceeding to vacate the order of adoption, and that the proper remedy of the petitioner was to bring the action in equity to set aside the surrogate's order of adoption by reason of the fraud which the petitioner alleged was perpetrated upon her in procuring her consent to such adoption. The justice presiding at Special Term, in dismissing said petition, indicated, in an opinion, that had the proceeding been predicated on the theory that the best interests of the child demanded that its custody be awarded to the petitioner, the court would probably have had jurisdiction. Thereupon the petitioner applied to the court for leave to file a supplemental petition setting forth facts tending to show that the best interests of the child would be subserved by awarding the custody to the petitioner. The court denied the application of the petitioner to file such supplemental petition, on the ground that, the court being without jurisdiction of the proceedings under the allegations in the original petition, the application for permission to file a supplemental petition could not be granted. Thereafter the present proceeding was instituted by the mother of the child. In her petition the petitioner realleges the allegations contained in her original petition with reference to the alleged fraudulent representations whereby the petitioner was induced to consent to the adoption of her daughter, and then realleges the allegations contained in the supplemental petition which the petitioner sought to file to the original petition, whereby the petitioner alleged facts showing, as she

claims, that the best interests of her infant daughter will be promoted by removing the custody of said child from the grandparents, the respondents herein, to the petitioner.

The petitioner then procured an order to show cause to be granted by a justice of the Supreme Court requiring the respondents to show cause why the petition herein should not be granted and why the custody of Karlyn Olga Von Tilzer, the daughter of the petitioner, should not be restored to the petitioner, and why the order of adoption of said Karlyn Olga Von Tilzer by the respondents should not be vacated and set aside. The respondents moved to dismiss the petition, on the ground that the same was insufficient as matter of law. The application of the petitioner coming on to be heard at Special Term, that court, by the order appealed from, directed that so much of the petition as prayed for an order vacating the order of adoption be dismissed, and that the paragraphs of the petition numbered " Fifth," " Sixth," " Seventh," " Eighth," and " Eleventh," wherein the petitioner alleged facts in support of her application to set aside the order of adoption by reason of the aforesaid fraud perpetrated upon her, be stricken from the petition. The order appealed from denied the motion of the respondents to dismiss the petition, except as to the paragraphs above mentioned, and further ordered that a referee be appointed to take testimony with respect to the allegations of the petition numbered " First," " Second," " Third," " Fourth," " Ninth," " Tenth," " Twelfth," " Thirteenth," " Fourteenth," " Fifteenth," " Sixteenth," " Seventeenth," " Eighteenth," " Nineteenth " and " Twentieth," concerning the contention of the petitioner that the best interests of her infant daughter would be served by awarding the custody of said infant to the petitioner, and that the referee return the testimony taken by him with his report to the court for further disposition. In dismissing so much of the petition as prayed for an order vacating the order of adoption and in striking out the above-mentioned allegations of the petition, the court, in an opinion, indicated that its action was by reason of the fact that the matter had already been disposed of by a previous order of this court. As to the remaining allegations of the petition, with reference to the determination of the child's custody according to its own best interests, the court held that that matter could be decided on the present application, and, as an aid to the court in the determination as to whether it would be for the advantage of the infant that its custody be retained by the foster parents, the respondents herein, or be awarded to the petitioner, directed that a referee inquire into and report upon said matter for the guidance of the court. From so much of the

order appealed from as struck out the aforesaid paragraphs of the petition the petitioner appealed. The respondents appealed from so much of the order as denied their motion to dismiss the petition and to strike therefrom the remaining paragraphs thereof.

We think the court was entirely right in holding, in effect, that the determination of the Special Term on the prior application, holding that the proceeding to revoke the adoption order could only be maintained through an action brought in equity for that purpose, and that the prior decision had become *res adjudicata* of that question, and that the court at Special Term properly struck out the allegations of the petition with reference thereto. We are, however, of the opinion that the petition did not show any facts upon which the court could determine that the best interests of the infant daughter of the petitioner would be served by taking the custody of the infant from the grandparents and awarding the same to the petitioner, or justifying a reference to inquire into such circumstances.

In support of her claim that the interests of the child would be best served by awarding to her the custody of the child, the petitioner alleges that she has independent means of her own, the amount, however, not being stated. She also states that her husband by her last marriage is in prosperous circumstances, and that she believes he draws upwards of $10,000 a year from his business, and that the petitioner and her husband are amply able financially to care for and support said infant child; whereas, she alleges that the respondents are people of limited means; that the grandfather is over sixty years of age and in very feeble health and unable to undergo strenuous exertion, and that the grandmother of the child is over fifty years of age; that in the home of the grandparents there also lives the mother of Mrs. Von Tilzer, a woman of the age of seventy-four years and in poor health; and that, except for the financial assistance of a sister of Mrs. Von Tilzer, the respondents would be unable to employ and pay for a nurse to care for the infant child. The petitioner alleges that she is but twenty-two years of age, and her husband, thirty-six, and that by awarding the custody of the infant to the petitioner and her husband, the child's opportunities for education, including foreign travel and study, would be very much greater than if she remained in the custody of her grandparents. The petition contains no allegation or suggestion that the child is not receiving proper care or that her health or moral or temporal interests are in anywise apt to be impaired by remaining in the custody of her grandparents. It is suggested in the petition that the age of the grandparents precludes the probability that they will live to direct and care for the child

until the latter comes to years of maturity, and that it is questionable what will happen to the child in the years to come with the elderly people with whom she is now located.

We think the allegations of the petition are entirely insufficient in law to justify the court in taking the custody of the child from the respondents. If, at any time in the future, it should develop that the environment of the child and the conditions under which she is being reared become, for any reason, impaired, and that the child's best interests would be promoted by transferring the custody to the petitioner, an application to that end may be made. Under the present circumstances, we see no reason why the foster parents should not be permitted to retain the child's custody.

So much of the order as denied the respondents' motion to dismiss the petition, and directed that a referee be appointed to take testimony in respect to its allegations, should be reversed, with costs, and respondents' motion to dismiss the petition in its entirety should be granted. The appeal from the order denying motion for resettlement should be dismissed.

FINCH, McAVOY, MARTIN and SHERMAN, JJ., concur.

So much of order entered March 5, 1930, as denied respondents' motion to dismiss petition and directed a referee be appointed to take testimony in respect to its allegations reversed, with costs to the respondents, and motion to dismiss the petition in its entirety granted. Appeal from order denying motion for resettlement dismissed.